No. 88–5347. PATILLO *v.* GEORGIA. Sup. Ct. Ga. Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth

:and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, .227 (1976), I would grant certiorari and vacate the death sentence .in this case.

JUSTICE MARSHALL, dissenting.

Adhering to my view that the death penalty is in all circum- ·stances cruel and unusual punishment prohibited by the Eighth .and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL J., dissenting), I would grant the petition .for certiorari and vacate the death sentence in this case.

· Even if I did not hold this view, I would still grant the petition .for certiorari. Petitioner was convicted of malice murder in con- ·nection with the death of a teenaged woman. The record in this case shows that at petitioner's sentencing hearing, the State's only witness against him was a prisoner by the name of David Chat- ·man. Chatman related to the jury highly damning statements ·which he asserted petitioner had made to him. These included ·petitioner's alleged assertion that "he hated women," that "he just :had nothing in him but hatred," and that he had harbored a desire ·to obtain revenge towards women ever since early childhood.

After petitioner was sentenced to death, however, Chatman ·wrote a series of letters to Georgia prosecutors claiming that he .had been promised that his probation would be reinstated if he .testified—and threatening to renege on his testimony against peti- ·tioner if the State did not live up to its end of the alleged agree- ·ment. The prosecution told petitioner's counsel about Chatman's .claims, and acknowledged for the first time that while the State ʾhad not promised to recommend that Chatman's parole be rein- stated, the prosecution had promised to inform the judge who had ·revoked Chatman's probation of his cooperation.

Based upon this information, petitioner moved for a new trial. The trial court and the Georgia Supreme Court both denied his motion, however. The State Supreme Court concluded that the prosecution's failure to disclose its deal with Chatman was error under *Giglio* v. *United States*, 405 U. S. 150 (1972). · However, it concluded that the prosecution's failure so to inform petitioner's counsel was harmless error. In support of this conclusion, it noted that the prosecutors' agreement with Chatman was modest and was "of a non-promising nature"; it also noted that Chatman had been otherwise impeached by the revelation at the penalty

phase of his own criminal record. 258 Ga. 255, 261, 368 S. E. 2d 493, 497–498 (1988).

I believe this factual record raises grave questions about whether the Georgia Supreme Court has correctly applied this Court's standards for finding harmless-error standards in capital cases, as outlined most recently in *Satterwhite* v. *Texas*, 486 U. S. 249 (1988). In *Satterwhite*, handed down shortly after the Georgia Supreme Court's decision in this case, we emphasized again the importance of avoiding error in capital cases; we stated that the proper standard of review is "whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.*, at 258–259 (quoting *Chapman* v. *California*, 386 U. S. 18, 24 (1967)). I believe it is far from clear that Georgia has satisfied this daunting standard, and therefore I would grant this petition.